**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

UNITED STATES OF AMERICA

        Plaintiff,

v.                                 Case No. 09-CR-20191

LARRY MELL McCREARY,

        Defendant.

_____/

### OPINION AND ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS

Pending before the court is Defendant's "Motion to Suppress Evidence," filed on July 13, 2009. The matter has been fully briefed, and a hearing on the motion was held on September 2, 2009. For the reasons stated below, the court will deny Defendant's motion.

## I. BACKGROUND

Defendant is charged with being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). (Indictment at 1.) The charges arise out of the execution of a search warrant by the Detroit Police Department at 5621 Rogers on April 2, 2009. (Def.'s Mot. ¶ 2; Govt.'s Ex. 1.) Defendant resided in a bedroom at this address and was present during the search. (Def.'s Resp. to 8/12/09 Order.) During the execution of the search warrant, the police found a firearm, which serves as the basis for the Defendant's indictment. (Def.'s Mot. ¶ 2; Def.'s Ex. 2.)

On April 2, 2009, a Wayne County magistrate judge issued a search warrant for 5621 Rogers in order to seize narcotics and related materials. (Govt.'s Ex. 2.) A Detroit

police officer signed a three-paragraph affidavit in support of the issuance of the warrant. (Govt.'s Ex. 1.) The first paragraph of the affidavit described the officer's qualifications, including over twenty-two years as a police officer and twelve years in the Narcotics Division. (Id.) The affidavit stated that the officer has "received specialized training in undercover techniques and investigative skills." (*Id.*) It further goes on to note that the officer "has participated in numerous narcotic raids and/or investigations where illegal narcotics were confiscated." (*Id.*)

The second paragraph of the affidavit, which forms the basis for the defendant's argument regarding lack of probable cause, states:

> On April 2, 2009, affiant set up fixed surveillance at 5621 Rogers, while at the location affiant observed a Mexican male walk up to the side of the location on the alley side of the dwelling and reach through a vent and place what appeared to be money and then grab a small item out of the vent and walk away. Affiant then observed a black female walk to the same side of the dwelling and observed the same transaction. While continuing fixed surveillance affiant observed a white female conduct the same [transaction] as the other persons. The white female (name and dob given upon request), who was stopped and questioned [about] the nature of being a[t] 5621 Rogers and stated that they were out of cocaine but have heroin and marijuana. Based on affiant's experience in drug trafficking and sale affiant believes drugs are being sold at this location. Affiant also found that this location at 5621 Rogers has a narcotics complaint# A09-386.

(*Id.*)

Finally, the affidavit offers the officer's conclusion that there is probable cause to find narcotics at the address based on the officer's "experience, training, and the above information." (*Id.*) Defendant argues that this affidavit was insufficient to support the issuance of a search warrant and that the evidence seized during the execution of the warrant should therefore be suppressed. (Def.'s Mot. ¶ 2.)

2

## II. DISCUSSION

### A. Reasonable Expectation of Privacy

In Defendant's motion to suppress, he "provided no statement explaining his presence in the subject house, how he might allege that he had any expectation of privacy therein, or how that expectation of privacy might be one that society is prepared to accept as legitimate." (8/12/09 Order at 3.) Thus, in the interest of judicial economy, the court issued an order requiring Defendant to file a supplemental statement demonstrating that "he had, at the time of the search, a reasonable expectation of privacy in the place searched." (*Id.*) On August 13, 2009, Defendant filed a response indicating that he had "standing" because he lived in a bedroom at the house that was searched. In the response and at the hearing, Defendant pointed to evidence which demonstrated that he lived there. Accordingly, the court finds that Defendant had a reasonable expectation of privacy in the place searched.[1]  *See United States v. Sangineto-Miranda*, 859 F.2d 1501, 1510 (6th Cir. 1988).

### B. Probable Cause

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no

---

[1]The Government does not contest this conclusion. At the hearing on the motion, the Government's position was that Defendant had both a subjective and objective expectation of privacy in the house. *See United States v. Washington*, 380 F.3d 236, 240 n.3 (6th Cir. 2004) ("[T]he government can waive the standing defense by not asserting it.")

Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."  U.S. Const. Amend. IV.

In determining whether an affidavit establishes probable cause,

[t]he task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place.  And the duty of a reviewing court is simply to ensure that a magistrate had a substantial basis for concluding that probable cause existed.

*United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004) (quoting *Illinois v. Gates*, 462 U.S. 213, 238-39 (1983)) (alteration in original).  An affidavit must contain "particularized facts," *United States v. McPhearson*, 469 F.3d 518, 524 (6th Cir. 2006), and a "nexus between the place to be searched and the evidence sought," *Carpenter*, 360 F.3d at 594 (quoting *United States v. Van Shutters*, 163 F.3d 331, 336-37 (6th Cir. 1998)).  Courts must "insist that the magistrate perform his 'neutral and detached' function and not serve merely as a rubber stamp for the police."  *McPhearson*, 469 F.3d at 524.  However, a magistrate's probable cause determination "should be paid great deference by reviewing courts."  *Gates*, 462 U.S. at 236.  Indeed, "'line-by-line scrutiny [of an underlying affidavit is] . . . inappropriate in reviewing [a] magistrate['s] decisions,'" and "'after-the-fact scrutiny by courts of the sufficiency of an affidavit should not take the form of de novo review.'"  *United States v. Allen*, 211 F.3d 970, 973 (6th Cir. 2000) (en banc) (quoting *Gates*, 462 U.S. at 246 n.14, 236) (alteration in original).

Defendant argues that the affidavit does not support a finding of probable cause.  (Def.'s Mot. at 4.)  Specifically, Defendant argues that the affidavit lacks any information

4

about the initial informant and that the observations of the affiant, standing alone, are insufficient. (Def.'s Mot. at 4.)  The Government argues that four aspects of the affidavit support the magistrate's determination of probable cause: (1) the police officer's observations as detailed in the affidavit, (2) the statement of the third buyer that "they were out of cocaine but have heroin and marijuana," (3) the prior narcotics complaint at the residence, and (4) the experienced police officer's conclusion about the nature of these events.  (Govt.'s Resp. at 11-12.)

In this case, "the existence of probable case is an extremely close call." *Washington*, 380 F.3d at 240.  Defendant points out that the affidavit was lacking in evidence of criminal activity and perhaps further investigation was warranted.  But the court's job when reviewing a magistrate's determination of probable cause is not to determine whether, in its opinion, the police could have performed the investigation differently.  *Allen*, 211 F.3d at 975-76 (The "affidavit is judged on the adequacy of what it does contain, not on what it lacks, or on what a critic might say should have been added . . . But while better investigative work is preferable to merely adequate investigation, it is not the constitutional measure of probable cause.").  Rather, the court must determine whether the affidavit provided the magistrate with a "substantial basis" for concluding there was probable cause that a search of the residence would yield evidence of a crime.  *Carpenter*, 360 F.3d at 594.

The Government relies on two cases from other Circuits involving hand-to-hand transactions in support of its argument that the magistrate did have a "substantial basis."  *See United States v. Persaud*, 167 F. App'x 920 (3d Cir. 2006) (finding probable cause to arrest the defendant when officers observed two hand-to-hand transactions

5

that officers believed were drug transactions, and officers stopped one of the parties to the transaction, who then stated that she possessed crack cocaine); *United States v. Funches*, 327 F.3d 582 (7th Cir. 2003) (finding probable cause when officers observed individuals drive to an alley, wait while one of the individuals drove to another location, and then upon that individual's return, exchange shopping bags in the alley).  However, a case from the Sixth Circuit, is more closely analogous to the present facts.  *See United States v. Rudolph*, No. 93-2392, 1994 WL 592932 (6th Cir. Oct. 27, 1994).  In *Rudolph*, officers received a tip from a reliable source that a heroin operation had just begun at a residence.  *Id.* at *1.  Conducting surveillance, the officers repeatedly observed individuals "walk up to the house, pass currency through a mail slot in the metal-grate front door, and receive small packages in return."  *Id.*  They stopped one of the individuals after leaving the house and found heroin.  *Id.*  Officers also observed the Defendant's car parked in front of the house and were aware that he had at least three prior narcotics convictions.  *Id.* at *5.  The allegation concerning the recency of the operation was confirmed by the electricity being established in Defendant's name a month earlier.  *Id.*  The court found that the affidavit was sufficient to establish probable cause, holding that the "agents' subsequent surveillance of that residence, and not the tip alone, provided the actual probable cause supporting the warrant."  *Id.*

The present case has many similarities to *Rudolph*.  The observations of the officers are nearly identical in that in both cases officers observed people going up to a house, exchanging money for a small item through a small opening in the house, and then immediately leaving.  Arguably, the circumstances in the present case are even more suspicious than in *Rudolph*, given that a vent on the side of the house was being

6

used, instead of the typical place where visitors are greeted, the front door, as in *Rudolph*. Also, in both cases a "police veteran with considerable experience in narcotics investigation, stated in the affidavit that he observed suspicious activity, consistent with drug trafficking, at the house on several occasions." *Id.* And in both cases, police were aware of prior drug activity. In *Rudolph*, the defendant, whose car was parked in front of the house, had three prior drug convictions. *Id.* In the present case, the residence had a prior narcotics complaint. Thus, three of the Government's bases for finding probable cause in the present case are nearly identical to the bases in *Rudolph*.

The present case is not completely analogous to *Rudolph* though. In *Rudolph*, the officers actually found drugs on the person that they stopped leaving the house after observing the suspicious transaction. *Id.* at *1. Here, the affidavit does not state that drugs were found on the woman that the officers stopped, but instead merely alleges a somewhat unreliable statement by the woman that "they were out of cocaine but have marijuana and heroin." (Govt.'s Ex. 1.) Thus, the Government's final basis, while possessing some similarities to *Rudolph*, provides less support for a finding of probable cause because here no drugs were actually found. Another important distinction is that in *Rudolph* the officers were acting on a tip from a reliable informant, whose tip was corroborated by the fact that the electrical service had recently been established at the house. *Rudolph*, 1994 WL 592932, at *1. Here, the affidavit does not provide any information about the initial tip or what led the officers to the residence in the first place. While not fatal, these differences do make the existence of probable cause in the present case "an extremely close call." *Washington*, 380 F.3d at 240.

7

When presented with a close call, the Sixth Circuit has assumed without deciding that there was no probable cause when the *Leon* good-faith exception clearly applied. *Id.* ("[G]iven our conclusion that the good-faith exception clearly applies, we will assume without deciding that probable cause did not exist."). Although the court is inclined to find that the magistrate had a "substantial basis" for finding probable cause, the court will nevertheless assume that there was no probable cause because, as discussed below, the *Leon* good-faith exception clearly applies. *See id.*

### C. The Good-Faith Exception to the Exclusionary Rule

Evidence seized without probable cause violates the Fourth Amendment and may be suppressed by the reviewing court. "When evidence is obtained in violation of the Fourth Amendment, the judicially developed exclusionary rule usually precludes its use in criminal proceeding against the victim of the illegal search and seizure." *Carpenter*, 360 F.3d at 595 (quoting *Illinois v. Krull*, 480 U.S. 340, 347 (1987)). However, "[t]he fact that a Fourth Amendment violation occurred . . . does not necessarily mean that the exclusionary rule applies." *Herring v. United States*, 129 S. Ct. 695, 700 (2009). Even if a reviewing court concludes that a warrant lacked probable cause, courts should not suppress "evidence obtained in objectively reasonable reliance on a subsequently invalidated search warrant." *Carpenter*, 360 F.3d at 595 (quoting *United States v. Leon*, 468 U.S. 897, 922 (1984)).

The "good-faith inquiry is confined to the objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization." *United States v. Higgins*, 557 F.3d 381, 391 (6th Cir. 2009) (quoting *Leon*, 468 U.S. at 922-23 n.23). Pursuant to *Leon*, the Sixth

8

Circuit has ruled that the good-faith exception will not apply in four specific situations:

> (1) where the affidavit contains information the affiant knows or should have known to be false; (2) where the issuing magistrate wholly abandoned his or her judicial role; (3) where the affidavit was so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable [or] where the warrant application was supported by [nothing] more than a "bare bones" affidavit; (4) where the warrant is so facially deficient that the executing officers cannot reasonably presume it to be valid.

*Washington*, 380 F.3d at 241.  The standard for the good-fath exception is "less demanding" than "the one involved in determining whether the affidavit provided a 'substantial basis' for the magistrate's conclusion of probable cause."  *McPhearson*, 469 F.3d at 526.

Defendant argues that the good faith exception should not apply because the affidavit is "bare bones."  (Def.'s Reply at 4.)  An affidavit is "bare bones" if it "states suspicions, beliefs, or conclusions, without providing some underlying factual circumstances regarding veracity, reliability, and basis of knowledge."  *United States v. Weaver*, 99 F.3d 1372, 1378 (6th Cir. 1996).  Here, the affidavit is not bare bones.  The affidavit would have been bare bones in the present case if it only contained paragraphs one and three, i.e. a statement regarding the officer's qualifications and experience and then his conclusion that based on this experience, there is probable cause to believe narcotics will be found at the residence.  The affidavit, however, did not merely contain conclusions but instead also contained the underlying factual basis for those conclusions.  Namely, the observations of the suspicious transactions on the side of the house through the vent, the woman's statements regarding the presence of heroin and marijuana in the residence, and the fact that there had been a previous narcotics complaint at the house.  (Govt.'s Ex. 1.)  Thus, the affidavit is not "bare bones."

9

*Higgins*, 557 F.3d at 390 (finding the affidavit to be "weak," but not "bare bones").

Defendant appears to be instead arguing that "the affidavit was so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Washington*, 380 F.3d at 241. Thus, the court's "inquiry is . . . whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization." *Higgins*, 557 F.3d at 391 (quoting *Leon*, 468 U.S. at 922 n.23). The court finds that a reasonable officer would not have known that the search was illegal despite the magistrate's authorization. *See id.* As explained above, the affidavit presents a close case regarding the existence of probable cause. Because it is such a close case, the affidavit cannot be said to be "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *See Washington*, 380 F.3d at 241. Indeed, the Sixth Circuit "has applied the good faith exception to warrants supported by far less information than that set forth [here.]" *Van Shutters*, 163 F.3d at 338. For example, in *Higgins*, officer reliance on a magistrate's determination of probable cause was deemed reasonable. *Higgins*, 557 F.3d at 391. There, the affidavit was made by an officer who was told by a second officer of statements made by persons recently arrested regarding the source of their drugs and that these statements were corroborated by the second officer driving the persons by the alleged source's house. *Id.* at 385. In the present case, not only did the affidavit contain statements alleging drug activity at the house as in *Higgins*, but it also described first-hand observations of an experienced officer of highly suspicious behavior for which there is no plausible innocent explanation. In addition, the house was known to have been involved in narcotics activity in the past. These facts arguably create a

10

"substantial basis" for a magistrate's determination of probable cause, but they most certainly provide enough of an indicia of probable cause to render objectively reasonable an officer's reliance on a magistrate's issuance of a warrant.  *See id.* at 391.

Defendant also argues that the affidavit contains false information.  (Def.'s Reply at 2, 4.)  The affidavit states "name and dob given upon request" regarding the woman that the officers stopped leaving the house.  (Govt.'s Ex. 1.)  Defendant argues that this was a false statement because the affiant only had the name and age of that person.  (Def.'s Reply at 4.)  However, the falsehood must be material to invalidate a warrant, *see United States v. Campbell*, 878 F.2d 170, 172 (6t Cir. 1989), and whether the officer merely had the age instead of the "dob" is not material.  The issuing magistrate would not be misled by this statement.  *See Leon*, 468 U.S. at 914.  Indeed, this type of *de minimis* discrepancy is not the type of deliberate falsehood for which there is an exception to the *Leon* rule.  *See generally Herring*, 129 S. Ct. 695 ("To trigger the exclusionary rule, police conduct must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system.").

Accordingly, the *Leon* good-faith exception applies, and the court will therefore not apply the exclusionary rule to the evidence seized pursuant to the search warrant in this case.

## IV.  CONCLUSION

IT IS ORDERED that Defendant's "Motion to Suppress Evidence" [Dkt. # 13] is DENIED.

                                       s/Robert H. Cleland
                                       ROBERT H. CLELAND
                                       UNITED STATES DISTRICT JUDGE

Dated:  September 16, 2009

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, September 16, 2009, by electronic and/or ordinary mail.

 s/Lisa Wagner
Case Manager and Deputy Clerk
(313) 234-5522