# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

UNITED STATES OF AMERICA

        Plaintiff,

v.                                Case No. 09-CR-20191

LARRY MELL McCREARY,

        Defendant.

_____/

### OPINION AND ORDER DENYING DEFENDANT'S "MOTION IN LIMINE TO EXCLUDE GOVERNMENT'S PROFFERED OTHER ACTS EVIDENCE"

Pending before the court is Defendant's "Motion in Limine To Exclude Government's Proffered Other Acts Evidence," filed on November 3, 2009. On November 12, 2009, the Government filed a response, and on November 16, 2009, an amended response. Having reviewed the briefs, the court concludes a hearing on this Motion is unnecessary. *See* E.D. Mich. LR 7.1(e)(2). For the reasons stated below, the court will deny Defendant's Motion.

## I. BACKGROUND

On April 2, 2009, officers conducted surveillance of a house located at 5621 Rogers. (Govt's Am. Resp. at 2.) While conducting surveillance, the officers observed three individuals "walk up to the side of the location on the alley side of the dwelling and reach through a vent and place what appeared to be money and then grab a small item out of the vent and walk away." (Search Warrant Aff., Govt's Resp. to Mot. to Suppress, Ex. 1.) The officers stopped and questioned the third individual, who stated that "they were out of cocaine but have heroin and marijuana." (*Id.*) After making these

observations, Officer Adrian Lawrence left the scene to obtain a search warrant while the other officers stayed behind and continued observation of 5621 Rogers. (Govt.'s Am. Resp. at 2.) On the same day, a Wayne County magistrate issued a search warrant in order to seize narcotics and related materials. (Search Warrant, Govt.'s Resp. to Mot. To Suppress, Ex. 2.)

When officers executed the warrant, they could not gain immediate access to the house because "the doors were heavily barricaded." (Govt.'s Am. Resp. at 2.) After "several minutes," Defendant opened the front door and admitted the search party. From the beginning of the surveillance to the time the search warrant was executed, officers did not observe any person enter or leave the house, (*Id.* at 2), and it became clear that the Defendant had been the only person inside. (*Id.*)

In one of the bedrooms in the house, officers seized a twelve gauge shotgun and a box of ammunition for a .357 caliber firearm. (Def.'s Mot. Br. at 1; Govt.'s Resp. at 2.) In the kitchen, officers seized an electronic scale that was found on a shelf.[1] (Govt.'s Am. Resp. at 2.) Officers also seized mail addressed to "Lisa Ortiz" and "Christian Ortiz." (Def.'s Mot. Br. at 1.) Neither drugs nor money was recovered when executing the search warrant. (*Id.* at 1-2.)

Defendant was subsequently charged with being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). (Indictment at 1.) The Government

---

[1]In the Government's initial response, it stated that the device was "covered in white powder." (Govt.'s Resp. at 2.) The Government amended its response to explain that the exterior of the scale was not "covered" in powder, and that instead an ATF agent "observed small amounts of white powdery substance underneath the surface of the scale, and trace amounts (approximately three small flakes) of a green leafy substance." (Govt's Am. Resp. at 2-3 n.2.)

notified the Defendant in a letter that:

> The Government intends to offer into evidence in the trial of your client (1) the observations of the Detroit Police Department officers during their surveillance of **** Rogers St. in Detroit, Michigan[,] on April 2, 2009[,] and (2) the electronic scale seized in the execution of the search warrant (at the same location and at the same date) both as intrinsic evidence related to the crime charged and as Fed.R.Evid. 404(b) evidence. Thus, this letter serves as the Government's Rule 404(b) notice.

(Def.'s Mot. at 1.) (alterations in original). On November 3, 2009, Defendant filed the present Motion In Limine.

## II. DISCUSSION

In his Motion In Limine, Defendant seeks to exclude (1) the observations of the officers during their surveillance of 5621 Rogers on April 2, 2009 and (2) the electronic scale seized during the execution of the search warrant. (Def.'s Mot. at 2.) Defendant argues that this evidence is not admissible as either background evidence or as Federal Rule of Evidence 404(b) evidence and that even if it were, the evidence should be excluded because its probative value is substantially outweighed by the danger of unfair prejudice under Federal Rule of Evidence 403. (*Id.*)

## A. "Background" or *Res Gestae* Evidence

Evidence of acts other than those that are the most central to the alleged criminal behavior may be properly admitted where the other acts constitute "background" or *res gestae* evidence. *See United States v. Hardy*, 228 F.3d 745, 748 (6th Cir. 2000). Background evidence "consists of those other acts that are inextricably intertwined with the charged offense or those acts, the telling of which is necessary to complete the story of the charged offense." *Id.* In order to be proper background evidence, it must have a "causal, temporal or spatial connection with the charged offense." *Hardy*, 228

F.3d at 748.  "Typically, such  evidence is a prelude to the charged offense, is directly probative of the charged offense, arises from the same events as the charged offense, forms an integral part of a witness's testimony, or completes the story of the charged offense."  *Id*.; *see also United States v. Till*, 434 F.3d 880 (6th Cir. 2006) (rejecting the defendant's argument that the "narrative of the firearm seizure could readily have been told without mentioning" the marijuana found in the car with the firearm or the crack cocaine found on defendant's person after being booked)*; United States v. Frederick*, 406 F.3d 754, 761 (6th Cir. 2005) (concluding that witness's testimony of the defendant's prior drug activities "helped 'complete the story'" of the witness's sale of the firearm at issue in the case to the defendant and that it "had at least a 'casual' and 'spatial' connection to the charged offense").

Defendant first argues that most of the cases admitting drug evidence as background evidence are drug conspiracy cases which are "readily distinguishable" from the present case.  (Def.'s Mot. Br. at 3.)  Defendant is correct that most cases applying the background exception involve conspiracy cases.  *See United States v. Rice*, 90 F. App'x 921, 924 (6th Cir. 2004) ("We have most often applied [the "background evidence" or *res gestae*] exception in conspiracy cases.").  However, the Sixth Circuit has also upheld the application of the *res gestae* or background evidence doctrine to felon in possession of a firearm cases.  *See United States v. Rhodes*, 314 F. App'x 790 (6th Cir. 2008)*; Till*, 434 F.3d 880; *Frederick*, 406 F.3d 754.  For example, in *Rhodes*, officers executed a search warrant at a two-bedroom apartment after conducting a controlled purchase of narcotics by an informant at this address.  *Rhodes*, 314 F. App'x at 792.  Upon executing the warrant, officers found three boxes of

4

ammunition in a closet in the room where the defendant was sleeping. *Id.* In the other

bedroom, where defendant's roommate was sleeping, officers discovered a gun and

cocaine. *Id.* Officers also found one bag of marijuana and one bag of cocaine on the

counter in the common area and a bag of cocaine in the living room under a hat that

resembled a hat officers had previously seen the defendant wearing. *Id.* The defendant

was charged with being a felon in possession of ammunition but was not charged with

any drug offenses. *Id.* He filed a motion in limine to exclude the evidence of marijuana

and cocaine found in the apartment arguing it was not relevant to his knowing

possession of ammunition. *Id.* at 792-93. The district court denied the motion and

admitted the evidence. *Id.* In upholding the district court's determination, the Sixth

Circuit reasoned:

> First, the drugs were *res gestae*, or "background," evidence. . . . Evidence
> of the controlled purchase and drugs found at the apartment initiated this
> case; the drugs explain why the police raided [defendant]'s apartment.
> Morever, the three baggies in the common area adjacent to [defendant]'s
> bedroom had a spatial and temporal connection to the ammunition. . . .
>
> Second, the drugs provided a motive for possessing the
> ammunition: protecting the drug stash. Contrary to [defendant]'s view that
> this case has 'nothing to do with drugs,' the district court followed the
> accepted view that guns (and naturally, ammunition) are 'tools of the
> trade' used to protect drugs and drug money. *See United States v.
> Hardin*, 248 F.3d 489, 499 (6th Cir. 2001) ("This Court has held many
> times that guns are 'tools of the trade' in drug transactions.").

*Id.* at 793.

Other circuits have reached the same result when faced with similar

circumstances. *See United States v. Strong*, 485 F.3d 985 (7th Cir. 2007); *United

States v. Butcher*, 926 F.2d 811, 816 (9th Cir. 1991) (noting that "there exists the

requisite nexus between guns and narcotics" and that "[t]he policies underlying [Rule

404(b)] are simply inapplicable when some offenses committed in a single criminal episode become 'other acts' because the defendant is indicted for less than all of his actions"). For example, in *Strong*, officers conducted a controlled narcotics purchase at the defendant's stepfather's house. *Strong*, 485 F.3d at 987. The police subsequently obtained a warrant, searched the house, and found money from the controlled purchase in the defendant's pocket, as well as drugs, guns, and ammunition in the house. *Id.* Officers returned to the house with an arrest warrant the following year and conducted surveillance. *Id.* The officers observed, "ten people, come up to the residence, go inside, stay just a few minutes, two to four minutes, and leave the residence." *Id.* (quoting the transcript). Officers then arrested the defendant and again found drugs and ammunition in the house. *Id.* The defendant was charged with being a felon in possession of a firearm and ammunition, but not with any drug crimes. *Id.* The government sought to introduce evidence of the controlled drug purchases, details of the surveillance, and the drugs found in the house. *Id.* The defendant objected because the government "would have the same problem in proving that he possessed or sold these drugs that they do in proving that he possessed the weapon, in that they don't have much evidence that he's the one that possessed it." *Id.* at 987-88 (quoting defense counsel). The district court admitted the evidence under the "inextricably intertwined" doctrine. *Id.* at 988. The Seventh Circuit upheld the district court's determination, stating that "[w]hen a defendant has been charged with possession of a firearm by a felon, we repeatedly have held that evidence of contemporaneous uncharged drug trafficking is admissible under the 'inextricably intertwined' doctrine because such evidence tends to prove 'knowing possession' of the firearm." *Id.* at 990.

6

The court noted that "drug trafficking supplies a motive for having [a] gun . . . [b]ecause weapons are 'tools of the trade' of drug dealers." *Id.* (citation omitted) (alteration in original). Regarding defense counsel's argument that there was no evidence he lived in the house or was involved in the drug trafficking, the court concluded that "[a]t most, counsel's contention goes to the weight, not the admissibility of the evidence." *Id.*

Here, the officer's observations leading up the search warrant and the items found when executing the search warrant, including the electronic scale, are "inextricably intertwined with the charged offense" such that admitting the evidence is "necessary to complete the story of the charged offense." *Hardy*, 228 F.3d at 748. The officer's observations have a causal connection to the charged offense because these observations are the reason why the officers raided the house leading to the discovery of the firearm. *See Rhodes*, 314 F. App'x 790 ("Evidence of the controlled purchase and drugs found at the apartment initiated this case; the drugs explain why the police raided [defendant]'s apartment."). The officer's observations and the scale have a temporal connection to the charged offense because the observations occurred the same day as the discovery of the firearm and the scale was discovered contemporaneous to the discovery of the firearm. *See id.* This evidence has a spatial connection to the charged offense because the observations occurred at the same house where Defendant was present and where the firearm was discovered and the scale was found in the same apartment where Defendant was present and where the firearm was discovered. *See id.* ("[T]he three baggies in the common area adjacent to [defendant]'s bedroom had a spatial and temporal connection to the ammunition."). The observations and the scale "complete the story" of what took place on the afternoon of

7

April 2, 2009 at 5621 Rogers in Detroit, Michigan.  *Hardy*, 228 F.3d at 748.  Accordingly, it is admissible as *res gestae* or background evidence.

Defendant argues that the evidence is not relevant because "[n]either the Detroit Police officers' observations or perceptions during surveillance nor the electronic scale found in the search of the Rogers address are of consequence to the simple question whether Mr. McCreary knowingly possessed this firearm nor is such evidence necessary to complete the story of the charged offense."  (Def.'s Mot. Br. at 5.)  A similar argument was rejected in *Till*, where the defendant argued that the "narrative of the firearm seizure could readily have been told without mentioning" the drugs found. *Till*, 434 F.3d at 883.  As in *Till*, here the evidence of Defendant's drug activities "show a motive or knowing possession of the firearm" and thus is relevant.  *Id.* (quoting *United States v. Smith*, 292 F.3d 90, 99-100 (1st Cir. 2002)).

Defendant further argues that there is "no clear evidence of any drug possession or trafficking in this case."  (Def.'s Mot. Br. at 4.)  However, "clear evidence" is not the standard for preliminary questions concerning the admissibility of evidence.  *See Huddleston v. United States*, 485 U.S. 681, 685 (1988) (applying Federal Rule of Evidence 404(b)).  Instead, evidence is admissible if there is sufficient evidence to support a finding by the jury that it occurred.  *See id.*  Based on the totality of the evidence, including the officer's observations of the suspicious exchanges through the side vent, the barricaded door, the scale, and the fact that the Defendant was the only person in the residence during the relevant time period, a reasonable jury could conclude that Defendant was engaged in drug-related activities.  *See id.* at 691 ("Individual pieces of evidence, insufficient in themselves to prove a point, may in

8

cumulation prove it. The sum of an evidentiary presentation may well be greater than

its constituent parts." (quoting *Bourjaily v. United States*, 483 U.S. 171, 179-80 (1987))).

Moreover, Defendant's argument is similar to the one that was rejected in *Strong* where

the defendant argued that the government "would have the same problem in proving

that he possessed or sold these drugs that they do in proving that he possessed the

weapon, in that they don't have much evidence that he's the one that possessed it."

*Strong*, 485 F.3d at 987-88. Like the *Strong* court, this court finds that Defendant's

argument regarding the sufficiency of the evidence linking Defendant to the drug activity

goes to the weight of the evidence, not its admissibility. *Id.* at 990. Accordingly, the

court concludes that the officer's observations and the scale are admissible as

"background evidence." *Hardy*, 228 F.3d at 748.

### B. Rule 404(b)

In addition to being admissible as background evidence, the officer's

observations and the scale are admissible under Federal Rule of Evidence 404(b).

Generally, "other acts evidence" is not admissible "to prove the character of a person in

order to show action in conformity therewith." Fed. R. Evid. 404(b). "It may, however,

be admissible for other purposes, such as proof of motive, opportunity, intent,

preparation, plan, knowledge, identity, or absence of mistake or accident . . . ." *Id.* The

Sixth Circuit has established a three-part test for determining if evidence falls under

Rule 404(b), and is thus admissible. First, the district court must decide whether the

proponent has demonstrated that the other act in question actually occurred. *Hardy*,

228 F.3d at 750. The district court need not make a finding that the proponent proved

the other act by a preponderance of the evidence; "such evidence should be admitted if

9

there is sufficient evidence to support a finding by the jury that the defendant committed the similar act." *Huddleston*, 485 U.S. at 685.  Second, the proponent must identify a specific purpose, other than the defendant's character, for which the evidence is offered, and the district court must determine whether this identified purpose is "material" or "at issue" in the case. *United States v. Merriweather*, 78 F.3d 1070, 1076-77 (6th Cir. 1996).  Finally, the court must engage in a Rule 403 analysis and determine whether the "probative value of the evidence is substantially outweighed by the danger of unfair prejudice." *Id.* at 1077.  After conducting this analysis, if the evidence is admitted, the district court "must 'clearly, simply, and correctly' instruct the jury as to the *specific* purpose for which they may consider the evidence." *Id.* (quoting *United States v. Johnson*, 27 F.3d 1186, 1193 (6th Cir. 1994)).

In this case, all three elements are satisfied and, when coupled with an appropriate limiting instruction, the evidence is admissible during the Government's case in chief.  There is sufficient evidence to support a finding by the jury that it was the Defendant who was engaged in these other acts and a reasonable jury could conclude that these acts constituted drug-related activities.  *See Huddleston*, 681 U.S. at 685. Officers observed persons walk up to the side alley of a house, make an exchange through a vent, and then walk away.  (Search Warrant Aff., Govt's Resp. to Mot. to Suppress, Ex. 1.)  An officer, experienced in narcotics activity, concluded that this was consistent with drug trafficking, and the court cannot discern a plausible innocent explanation for these observations.  (*Id.*)  When the officers executed the search warrant, they could not gain immediate entry because the door was barricaded, and barricaded doors are consistent with drug trafficking.  *See United States v. Mackey*, 265

10

F.3d 457, 460 (6th Cir. 2001). After gaining entrance to the house, an electronic scale was found containing traces of white powder and a green leafy substance, and an ATF agent concluded the scale was previously used to weigh narcotics. (Govt.'s Am. Resp. at 2-3 n.2.) Throughout all of this, no one was seen entering or exiting the house, and Defendant was found to be the only person inside. (*Id.* at 2.) Accordingly, a reasonable jury could conclude that both the exchanges observed by the officers and the scale seized during the search were drug-related and that Defendant was involved in these exchanges and that the scale had been used as a part of this drug operation.

The Government has identified "motive, intent, and knowledge" as the specific purposes for which it is offering the evidence. (*Id.* at 5.) Defendant acknowledges that "there is authority for the proposition that evidence of drug possession may identify a motive for firearm possession." (Def.'s Mot. Br. at 4.) The Sixth Circuit as well as other circuits have stated on numerous occasions that evidence of drug trafficking is properly admissible as motive for gun possession. *See, e.g.*, *Till*, 434 F.3d at 883 ("There is strong authority for the proposition that evidence of drug possession can and perhaps ought to be admitted in cases of alleged firearm possession, party to show motive for such possession."); *Frederick*, 406 F.3d at 761 ("Courts have held that evidence of drug dealing is admissible to show a motive to possess firearms illegally."); *United States v. White*, 356 F.3d 865, 870 (8th Cir. 2003) ("Our court recognizes the known correlation between drug dealing and weapons, and accepts that they are closely and integrally related to the issue of possession of a firearm."). The court therefore concludes that the officer's observations and the scale, both of which are evidence that Defendant engaged in narcotics trafficking, are properly admissible to show that Defendant had a

11

motive to possess the firearm.  *See Merriweather*, 78 F.3d at 1076-77.

### C. Rule 403

Before evidence is admitted as "background evidence" or under Rule 404(b), the court must first conduct a balancing test pursuant to Federal Rule of Evidence 403. Rule 403 states that "evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."  Fed. R. Civ. P. 403.  Rule 403 is a "rule of inclusion" and therefore the court "must view the evidence in the light most favorable to its proponent, the government, and maximize its probative value."  *United States v. McCutchen*, 150 F. App'x 517, 523 (6th Cir. 2005).  Evidence that the other acts of a defendant constituted a crime will always be prejudicial.  *See United States v. Passarella*, 788 F.2d 377, 384 (6th Cir. 1986.)  "The real question is whether this evidence was 'unfairly' prejudicial and whether such unfair prejudice substantially outweighed the probative value of the evidence."  *Id.*

In this case, viewing the evidence in a light most favorable to the Government, the probative value of this evidence is relatively high.  *See McCutchen*, 150 F. App'x at 523.  Regarding the officer's observations of individuals going up to the side vent of the house, making exchanges, and then leaving, this evidence demonstrates why the officers raided the house at 5621 Rogers.  Without this evidence, the jury will be left speculating why the officers raided this house and what were they looking for in it.  *See Old Chief v. United States*, 519 U.S. 172, 187-89 (1997) (discussing juror expectations at trial and noting that a "party seemingly responsible for cloaking something has reason

12

for apprehension").  A bare assertion that they executed a warrant on the house and ended up finding a firearm does not explain the entire story.  *Id.* ("A syllogism is not a story, and a naked proposition in a courtroom may be no match for the robust evidence that would be used to prove it.  People who hear a story interrupted by gaps of abstraction may be puzzled at the missing chapters, and jurors asked to rest a momentous decision on the story's truth can feel put upon at being asked to take responsibility knowing that more could be said than they have heard.").  The evidence of the officer's observations is therefore necessary to properly explain the events leading up to the seizure of the firearm.  Moreover, both the officer's observations and the seizure of the electronic scale are highly indicative of drug-related activities.  This evidence, coupled with the fact that the house was barricaded and Defendant was the only person inside during the pertinent time period, demonstrate probable drug trafficking activities by Defendant.  And as many courts have held, evidence of drug trafficking is probative of a motive to possess a firearm.  *See, e.g.*, *Till*, 434 F.3d at 883; *Frederick*, 406 F.3d at 761; *White*, 356 F.3d at 870.

Given the facts of the case, the danger of unfair prejudice to the Defendant in admitting the evidence is slight.  Of course, the Defendant would prefer that the jury not hear evidence that he was engaged in drug dealing.  However, the Government is not attempting to introduce evidence of the Defendant drug trafficking at some time point in the distant past, where there is a concern that the jury will think "once a drug dealer, always a drug dealer" and convict on that basis.  Instead, the drug trafficking activity is contemporaneous to the finding of the firearm, which is the subject of this case.  It is part of a single story leading up to Defendant's arrest.  Accordingly, it is not unfair to

13

Defendant to admit this evidence at trial.

In conducting the Rule 403 balancing test, the court finds that the danger of unfair prejudice does not substantially outweigh the probative value of admitting (1) the officer's observations leading up to the arrest, and (2) the electronic scale seized from the residence.  The court, however, finds that the danger of unfair prejudice in admitting the statements of the unknown third individual that "they were out of cocaine but have heroin and marijuana" substantially outweighs its probative value.  *See* Fed. R. Civ. P. 403.  The statement is likely hearsay, but even if not offered for the truth of the matter asserted, the probative value is slight due to the fact that the officers have little information concerning this person and the fact that there is other evidence available demonstrating that drug activity was present.  Accordingly, the court will admit the electronic scale and testimony regarding the officer's observations, except for the "white female's" statement that "they were out of cocaine but have heroin and marijuana."

### D. Limiting Instruction

When evidence is admissible for a limited purpose, the court shall give an appropriate cautionary instruction.  *See* Fed. R. Evid 105; *Merriweather*, 78 F.3d at 1077.  Accordingly, the court will give an appropriate cautionary instruction whether or not there is a request for one by the parties.

### III.  CONCLUSION

IT IS ORDERED that Defendant's "Motion in Limine To Exclude Government's Proffered Other Acts Evidence" [Dkt. # 26] is DENIED.

 s/Robert H. Cleland
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

14

Dated:  November 20, 2009

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, November 20, 2009, by electronic and/or ordinary mail.

   s/Lisa Wagner
Case Manager and Deputy Clerk
(313) 234-5522